UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA DOUGLAS HENDERSON,

    Plaintiff,

v.   Case No. 8:23-cv-00763-TPB-CPT

NICHOLAS MILILLO, et. al,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on "Defendants' Motion to Dismiss and Memorandum of Law," filed on October 6, 2023, by Defendants Nicholas Milillo, Christopher Fowler, and Michael Beaver. (Doc. 30). Plaintiff Joshua Douglas Henderson filed a response in opposition. (Doc. 33). After reviewing the motion, response, court file, and the record, the Court finds as follows:

### Background[1]

Plaintiff Joshua Douglas Henderson was charged with one count of first-degree murder after he was accused of shooting his ex-girlfriend Shyanne Turner in the head on August 13, 2021.[2] *See State of Florida v. Joshua Douglas Henderson*, No. 21-0620-

---

[1] The Court accepts as true the facts alleged in Henderson's complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[2] Henderson claims that he was charged and acquitted of the crime of attempted murder of a law enforcement officer after he was accused of attempting to drown a police officer in a pond while the officer tried to apprehend him. However, it appears that he did not go to trial on that charge and was not "acquitted." Rather, the State decided to proceed with indictment only on the first-degree murder charge – the attempted murder of a law enforcement charge

CF (Fla. 6th Jud. Cir.). On June 5, 2024, following a jury trial, Henderson was found guilty of murder in the first degree, and he was sentenced to a minimum mandatory of life in prison, without the possibility of parole. Henderson is currently appealing his judgment and sentence.

Henderson filed a civil rights complaint under 42 U.S.C. § 1983. In his complaint, he asserts claims for false arrest and excessive force in violation of the Fourth and Fourteenth Amendments and Article One, Sections 2, 9, and 12 of the Florida Constitution.[3] Henderson alleges that, on August 31, 2021, at approximately 7:04 p.m., he was minding his own business behind 1763 Carlyle Street in Clearwater, Florida. According to Henderson, he was simply "looking over the pond" when "officers came screaming with guns drawn." According to Henderson, he fell into the pond as he reacted to a dog charging at him. The officers jumped into the pond "and started punching [him] and twisting [his] wrist and arms as [he] was trying to tread water because [he] couldn't feel the bottom." Henderson claims that he wasn't fighting or resisting, and he "heard [someone] say, 'I am going to kill your black ass'" as his "face was getting pushed under water."

Henderson "somehow ended up out of the water" and "they ripped [his] black shoes off and searched [his] pants." Henderson states that "everything happened so fast." "[He] was put in a police car – cuffs super tight." He "swallowed so much water

---

remained under investigation.
[3] Henderson also filed a document "seeking relief for civil rights violations," which was docketed as a supplement to his complaint. (Doc. 17). However, the alleged civil rights violations are related to the conditions of his confinement, do not name any defendants, and appear unrelated to the claims in this case. The Court notes that Henderson already filed a case seeking relief for civil rights violations related to the conditions of his confinement. *See Henderson v. Gualtieri*, 8:23-cv-1907-MSS-CPT (M.D. Fla.).

in his mouth and nose [he] believe[s] he started seeing things." Defendants brought him to the police station where they read him his rights "after a good two hours of sittin[g] in the room." They told him that they were "charging him with another crime." They took him to the county jail where he was charged with two crimes, the first was "dismissed due to lack of probable cause," but Henderson remained in the county jail on the other crime.

In explaining how Defendants acted under color of law, Henderson claims that Milillo "repeatedly" punched him in the face during the arrest. Fowler "twisted and broke his hand while he was not resisting" and "placed cuffs on [him] so tight that it pinched a nerve in [his] writing hand." He claims that "all three officers . . . committed perjury [in] the arrest affidavit" and Sgt. Beaver "committed perjury by writing a false report and then changing his story in court . . . ."

Henderson claims that he suffered a broken hand, pinched nerve in his wrist, parasites growing in his nose from the pond water, mental anguish, and post traumatic stress disorder. He requests compensatory damages, punitive damages, and court costs.[4]

**Legal Standard**

Defendants move under Federal Rules of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim. Federal Rule of Civil Procedure 8(a) requires

---

[4] Additionally, Henderson requests damages for causes of action not sufficiently alleged in his complaint. For instance, he requests damages for slander and for damaging his future business relationships. He further requests relief for illegal arrest, perjury, assault, battery, malicious prosecution, malicious interference, false imprisonment, or any other intentional tort. The requests for damages related to those claims are denied and any intended causes of action related to the damages requested are dismissed without prejudice for failure to state a claim. *See* (Doc. 4 at 5).

that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

As Henderson in this case proceeds *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform to procedural rules, and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

**Analysis**

*Shotgun Pleading*

Defendants argue that the complaint should be dismissed for procedural defects because the complaint constitutes a shotgun pleading. Specifically, Defendants argue that Henderson's complaint is a shotgun pleading because the complaint does not separate the false arrest and excessive force claims in separate counts and does not plead separate counts for the alleged violations of the Fourth and Fourteenth Amendments.

Complaints that violate the pleading requirements of Federal Rules of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.' " *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings fail to articulate claims with sufficient clarity to allow Defendants to frame a responsive pleading. *Id.* at 1323 (explaining that a shotgun pleading is any pleading which "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests").

The complaint constitutes a shotgun pleading due to the improper mixing of claims. The motion is therefore granted as to this ground, and the complaint is dismissed without prejudice as a shotgun pleading.

*Fourteenth Amendment Claims*

Defendants argue that Henderson cannot state a cause of action under the Fourteenth Amendment. Pretrial detainees enjoy the protection afforded by the Due Process Clause of the Fourteenth Amendment, which ensures that no state shall "deprive any person of life, liberty or property, without due process of law." U.S.

Const. amend. XIV.

To the extent that Henderson alleges his Fourteenth Amendment rights were violated during his arrest, the Court finds that he cannot state a claim for relief because he was not a pretrial detainee at the time the arrest occurred.  *See, e.g., C.P. by and through Perez v. Collier Cty.*, 145 F. Supp. 3d 1085, 1091-92 (M.D. Fla. 2015) (dismissing Fourteenth Amendment claim where allegations of excessive force solely related to excessive force used during arrest of the plaintiff).  While Henderson alleges a violation of the Fourteenth Amendment in addition to the Fourth Amendment for false arrest and excessive force, he has not alleged any facts that would provide him any protection beyond that afforded to him by the Fourth Amendment.  *See Albright v. Oliver*, 510 U.S. 266, 274, (1994) (stating that the Fourth Amendment was drafted to address the matter of pretrial deprivations of liberty).  Therefore, Henderson's Fourteenth Amendment claims based on his arrest are dismissed, without leave to amend.

***Official Capacity Claims***

Henderson's complaint alleges violations of his civil rights against Defendants in both their individual capacities and their official capacities. Defendants argue that Henderson's official capacity claims must be dismissed for failure to state a claim.

A claim against a defendant in his official capacity is a suit against the entity of which the named defendant is an agent.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  To attribute liability to a defendant in their official capacity under § 1983, Henderson must allege that "the moving force of the constitutional violation" was an official policy or custom.  *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211

(1993) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).  Henderson alleges no such policy or custom in the complaint.  Consequently, the official capacity claims are dismissed without prejudice, with leave to amend.   Should Henderson wish to pursue official capacity claims against each defendant, those claims must be set out in separate counts from any individual capacity claims.

***Failure to State a Claim***

    <u>False Arrest</u>

Defendants argue that Henderson cannot state a viable false arrest claim because the existence of probable cause for an arrest constitutes an absolute bar to both state and § 1983 claims alleging false arrest.  Specifically, Defendants contend that investigation of the incident revealed probable cause for Henderson's arrest for murder and attempted murder, and that the state court found probable cause to support the charges against Henderson.[5]

"Probable cause renders a seizure pursuant to legal process reasonable under the Fourth Amendment."  *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (citing *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010)).  "Consequently,

---

[5] Defendants cite to the several documents to support their motion, including an arrest affidavit.  "[A] court may consider an affidavit for an arrest warrant, the resulting arrest warrant, and other matters of public record—even if they are not attached to a complaint—without converting a Rule 12(b)(6) motion to one for summary judgment."  *Mathis v. Eslinger*, No. 3:19-CV-274-J-39JRK, 2020 WL 12432735, at *5 (M.D. Fla. Aug. 5, 2020), *report and recommendation adopted*, No. 3:19-CV-274-J-39JRK, 2020 WL 12432732 (M.D. Fla. Sept. 15, 2020), *aff'd*, No. 20-13761, 2022 WL 16849124 (11th Cir. Nov. 10, 2022) (citation omitted).  Thus, the Court may take judicial notice of these public records without converting the motion to dismiss into a motion for summary judgment.  However, because Henderson disputes the veracity of the arrest affidavits in his complaint, the Court relies only on the statements in the arrest affidavit that are not specifically disputed by the allegations in Henderson's complaint.  *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (citations omitted).

'the presence of probable cause defeats' a claim that an individual was seized pursuant to legal process in violation of the Fourth Amendment." *Id.* (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)). "[P]robable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest." *Lorenzo v. City of Tampa*, 259 F. App'x 239, 241 (11th Cir. 2007) (quoting *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998)).

"The correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude . . . that there was a substantial chance of criminal activity.'" *Washington*, 25 F.4th at 902 (citing *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)). "A substantial chance is all that is required, not an actual showing of such activity." *Davis v. City of Apopka*, 78 F.4th 1326, 1334-35 (11th Cir. 2023), *cert. denied sub nom. Davis v. City of Apopka, Fla.*, 144 S. Ct. 2528 (2024).

In this case, Henderson did not include a copy of the arrest affidavits as part of the complaint. However, in describing how the Defendants acted under color of law in the complaint, Henderson stated "all three officers . . . committed perjury [in] the arrest affidavit" and Sgt. Beaver "committed perjury by writing a false report and then changing his story in court . . . ." These statements are too general and conclusory for the Court to know which specific statements in the affidavit Henderson alleges are false. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 515 (11th Cir. 2019). Therefore, the Court relies only on the statements in the arrest affidavit that are not specifically disputed by the allegations in Henderson's complaint. These include the facts occurring before and after Henderson's arrest.

The affidavit in support of the charge of attempted murder of a law enforcement officer states that:

> AT APPROXIMATELY 7:00 PM, CLEARWATER POLICE OFFICERS FOWLER AND MILILLO ALONG WITH THE VICTIM (DEPUTY JULIET) WHO IS A PSCO K-9 DEPUTY WERE ALERTED BY NEARBY RESIDENT THAT THE DEF WAS BEHIND 1763 CARLISLE ST. UPON THE VICTIM AND CLEARWATER OFFICERS APPROACHING THE LAKE, THE VICTIM OBSERVED THE DEF INSIDE THE WATER AND ENTERED THE WATER TO APPREHEND THE DEF FOR FIRST DEGREE MURDER OF SHYANNE TURNER . . . .[6]

The affidavit in support of the charge of murder in the first degree states that:

> THE VICTIM WAS DRIVING 2020 NISSAN SENTRA, 4-DOOR, BEARING FL TAG XXXXX WHILE TRAVELING EAST ON OTTEN ST TOWARDS WESTON DR WHILE THE DEF WAS SEATED IN THE FRONT PASSENGER SEAT. THE DEF THEN USED CAL .380 SEMI-AUTO RUGER HANDGUN AND SHOT THE VICTIM IN THE HEAD ONE TIME. THE DEF THEN POSITIONED THE VICTIM ON THE FRONT PASSENGER SIDE OF THE VEHICLE WHILE THE DEF TRANSITIONED INTO THE DRIVER SEAT AT WHICH TIME THE DEF DROVE TO 1713 TOWNSEND WHERE HE ABANDONED THE NISSAN SENTRA WITH THE DECEASED VICTIM STILL INSIDE. THE DEF THEN FLED FROM THE VEHICLE ON FOOT AND WAS LOCATED AFTER FOOT PURSUIT WITH LAW ENFORCEMENT. THE MURDER OF THE VICTIM WAS WITNESSED BY PEDESTRIAN WHO WAS NEXT TO THE VEHICLE. POST MIRANDA, THE DEF STATED HE AND THE VICTIM HAVE BEEN IN DATING RELATIONSHIP FOR APPROXIMATELY SEVEN MONTHS. THE DEF ADMITTED THAT THE VICTIM WAS DRIVING THE NISSAN SENTRA THAT WAS RENTED IN HIS NAME AND HE WAS IN THE FRONT PASSENGER SEAT. THE DEF STATED HE USED CAL .380 HANDGUN TO SHOOT THE VICTIM ONE TIME IN THE HEAD.

---

[6] The affidavit in support of the charge of attempted murder of a law enforcement officer also states that "ONCE IN THE WATER, THE DEF GRABBED THE COLLAR PORTION OF THE VICTIM[']S [PCSO K-9 DEPUTY JULIET'S] OUTER BALLISTIC VEST AND ATTEMPTED TO REPEATEDLY SUBMERGE HER UNDER THE WATER. CLEARWATER OFFICER MILILLO WAS ABLE TO ASSIST THE VICTIM IN APPREHENDING THE DEF AND EXIT THE WATER."  As noted above, the Court cannot consider these facts at this stage of the proceedings since Henderson's allegations are in dispute with this statement.  Thus, the Court does not rely on these statements from the arrest affidavit.

Based on the facts alleged by Henderson, a reasonable officer could conclude that Henderson was engaged in criminal activity. Officers were searching for Henderson because he was a suspect in a murder that happened earlier in the day. A resident alerted the officers that Henderson was behind 1763 Carlisle Street. When officers approached, Henderson "fell into the pond as [he] reacted to the dog charging [him]." A reasonable officer could conclude that "there was a substantial chance of criminal activity'" given the earlier murder, and that Henderson was attempting to evade arrest when Henderson entered the water. *See Washington*, 25 F.4th at 902 (citation omitted). Therefore, given the nature of the crime committed and based on the facts alleged in Henderson's complaint, Defendants had probable cause to detain and arrest him.[7]

Henderson states that probable cause did not exist because the first charge (attempted murder of a law enforcement officer) was dismissed.[8] However, the existence of probable cause is not negated even if the charges are ultimately dismissed. *See Harris v. Hixon*, 102 F.4th 1120, 1126 (11th Cir. 2024) (citing *Davis,* 78 F.4th at 1326 ("After all, probable cause can survive an acquittal."); *Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested."); *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018)

---

[7] Insofar as Henderson is alleging that he was falsely arrested because the arrest was warrantless, "an arrest conducted in a public place must be supported by probable cause, but it does not require a warrant." *McClish v. Nugent,* 483 F.3d 1231, 1238 (11th Cir. 2007).
[8] The indictment notes that "[C]ount 1 Attempted Murder on LEO has been renumbered to Count 2 and is still under investigation and is being left open at this time by the State Attorney's Office."

(same)). "Probable cause is not a high bar." *Id.* at 1126 (quoting *Wesby,* 583 U.S. at 57).

Assuming that Henderson's allegations are true, the Court finds that the officers had probable cause to arrest Henderson. As such, Henderson has failed to establish that the Defendants violated his Fourth Amendment rights as a matter of law, and Defendants' motion to dismiss is granted as to this ground. Amendment would be futile under the facts as alleged by Henderson. Thus, Henderson's false arrest claims are dismissed with prejudice, without leave to amend.

<u>Excessive Force</u>

Defendants argue that Henderson cannot state an excessive force claim because the officers did not use excessive force in carrying out the arrest where the allegations of the complaint demonstrate that Henderson was actually resisting. Further, Defendants argue that "all of the hallmarks required for the reasonable use of force were present" based on the factors used in evaluating an excessive force claim.

The Fourth Amendment encompasses "the right to be free from the use of excessive force in the course of an arrest." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021) (citation omitted). "[T]he Supreme Court has 'recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)). "Not every push or shove violates the Fourth Amendment. *Johnson,* 18 F.4th at 1272. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances

that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Connor*, 490 U.S. at 396-97.

Whether the amount of force employed by officers is excessive "depends on the facts and circumstances of each particular case, including a non-exhaustive list of factors, such as (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Johnson*, 18 F.4th at 1272 (citations and quotations omitted). Courts also consider the need for the application of force, the relationship between the necessity of force and the amount of force used, and the extent of the injuries inflicted. *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (citation omitted).

"[G]ratuitous force against a suspect who is secure, not resisting, and not a safety threat to the officer or other officers" violates the Fourth Amendment. *Johnson*, 18 F.4th at 1272 (holding officer used excessive force when he entered the holding cell and forcibly struck Johnson, who was then secure, not resisting, and not a safety threat to any officers). However, "it may be reasonable for an officer to use force against a suspect who is resisting and not subdued." *Id.* at 1272-73 (citations omitted); *see Godman v. City of Largo, Fla.,* No. 8:08-CV-00333JDWTBM, 2009 WL 1651524, at *7 (M.D. Fla. June 10, 2009) (noting that although the officers attempt to restrain the plaintiff in handcuffs resulted in a fractured arm, "it did not violate her constitutional right to be free from excessive force during the course of an arrest"); *Mobley*, 783 F.3d at 1355 (concluding officers' use of force in striking, kicking, and tasing suspect was not excessive where the suspect, though pinned on the ground, was

"refusing to surrender his hands to be cuffed"); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1334-35 (11th Cir. 2004) (concluding the officer's pushing suspect's face down with his foot in order to handcuff the suspect was not excessive force where the suspect, though lying flat and immobile, "was able to wrestle his hand loose and push [the officer's] foot away ")).

First, considering the force employed in the pond, based on the facts alleged by Henderson, the Court finds that the use of force was warranted.  Defendants were pursuing a suspect for the serious crime of murder in the first degree by use of a handgun.  The suspect fled by car after the shooting, abandoned the car, and then fled on foot.  A nearby resident alerted Defendants to Henderson's location.  Since a handgun was used in the earlier murder, Henderson was likely armed and could pose a threat to the safety of the public and the officers.  Henderson admits to entering the pond, which could be seen by a reasonable officer as an attempt to flee from or to evade arrest.  In addition, while Henderson claims he was not resisting, he admits that he was treading water when officers entered the water and tried to arrest him.[9]  Based on these movements, a reasonable officer could conclude that he was resisting at that time.  It was necessary for the officers to retrieve Henderson from the water, search him, and secure him with handcuffs. Therefore, the use of force in the water was warranted.

---

[9] By definition, treading water requires the movement of the arms and the legs to float upright in a vertical position. *See Cambridge Advanced Learner's Dictionary & Thesaurus, Cambridge University Press,* https://dictionary.cambridge.org/us/Dictionary/English/tread-water (last visited Sept. 26, 2024).

Moreover, Henderson has failed to allege sufficient facts to demonstrate that Defendants used excessive or gratuitous force after he was secured and handcuffed. Beyond generally tight handcuffs, it is not clear what force Henderson alleges was excessive or gratuitous. The Court will grant leave to amend as to any force employed after Henderson was handcuffed, to the extent that he may do so in good faith. Defendants' motion to dismiss on Henderson's claim of excessive force is granted as set forth herein, with leave to amend only as to force employed after the handcuffing.[10]

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Motion to Dismiss and Memorandum of Law" (Doc. 30) is **GRANTED** to the extent that Henderson's complaint is **DISMISSED**, with leave to amend as set forth herein. The motion is otherwise **DENIED WITHOUT PREJUDICE.**

2. Henderson may file an amended complaint no later than **October 30, 2024**, on the standard form. He must label the form "Amended Complaint," must write "Case Number 8:23-cv-763-TPB-CPT" on the form and must assert all claims that he intends to raise on the form. He must not refer to the earlier dismissed complaint.

3. The Clerk is **DIRECTED** to enclose a copy of the standard form for a federal civil rights complaint with this Order.

---

[10] Defendants also generally assert that they are entitled to qualified immunity on all counts, but they indicate that they "cannot, in good faith, clearly articulate their right to qualified immunity in this motion given the incoherent form and content of Henderson's pleading." Because the Court is permitting Henderson to file an amended complaint, Defendants may assert qualified immunity if Henderson does so.

**HENDERSON'S FAILURE TO COMPLY WITH THIS ORDER WILL RESULT IN THE DISMISSAL OF THIS ACTION WITHOUT FURTHER NOTICE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, on this <u>30th</u> day of September, 2024.

TOM BARBER
UNITED STATES DISTRICT JUDGE